No. 95-085

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

STATE OF MONTANA,

    Plaintiff and Respondent,

v.

DAVID LLAMAS BLAKE,

    Defendant and Appellant.

FILED

DEC 21 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Tenth Judicial District,
In and for the County of Judith Basin,
The Honorable Peter L. Rapkoch, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Torger S. Oaas, Lewistown, Montana

        John Keith, Great Falls, Montana

    For Respondent:

        Honorable Joseph P. Mazurek, Attorney General;
John P. Connor, Jr., and Elizabeth L. Griffing,
Assistant Attorneys General, Helena, Montana

        James A. Hubble, County Attorney, Stanford,
Montana

Submitted on Briefs:  November 16, 1995

Decided:  December 21, 1995

Filed:

_____
Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

David Llamas Blake (Blake) appeals the decision of the Tenth Judicial District Court, Judith Basin County, denying him eligibility for parole or participation in a supervised release program. We affirm.

The sole issue on appeal is whether the District Court erred in denying Blake eligibility for parole or participation in a supervised release program.

Blake is a native of Mexico. He has spent nearly the past twenty years in the United States, primarily working on farms and ranches. Previous employers indicate Blake was a skilled and hardworking ranch hand.

Wayne Stevenson, a prominent Montana rancher, was the owner and operator of the Basin Angus Ranch near Hobson, Montana. In September 1993, Stevenson hired Blake to work as a ranch hand. Blake was provided a home for himself and his family as well as a monthly salary.

On the evening of March 27, 1994, Stevenson went to the calving barns located near Blake's residence. Stevenson met Blake at the calving barn. An argument ensued between the two men. Following the argument, Blake retrieved a .22 caliber rifle and fired eight shots at Stevenson. Six shots struck Stevenson, causing his death. Blake put Stevenson's body in the bucket of a skid-steer loader and moved it from the calving barn to a horse barn, where he buried it under a pile of dirt and manure.

Blake returned to his residence and telephoned Stevenson's wife. Without identifying himself, he told Mrs. Stevenson that her husband had been kidnapped and demanded a one million dollar ransom. Mrs. Stevenson did not know it was Blake who made the ransom demand. Knowing that her husband had gone to the calving barns near Blake's residence, Mrs. Stevenson telephoned Blake and asked him if he had seen her husband. Blake informed Mrs. Stevenson that he had not seen her husband, but would go and look for him. Blake called Mrs. Stevenson a short while later, stating that he could not locate her husband but that his pickup truck was parked near the calving barn.

Following a criminal investigation, Blake was charged with deliberate homicide. He pled guilty to deliberate homicide resulting in the death of Wayne Stevenson. Blake admitted that he shot Stevenson repeatedly with a .22 caliber rifle, buried Stevenson's body and made the ransom call to Mrs. Stevenson.

Blake was represented by counsel at all proceedings relevant to this matter. At the change of plea hearing, Blake acknowledged the severity of his potential punishment and the fact that he might not be eligible for parole. Blake likewise signed an Acknowledgment of Rights and Plea Agreement which explicitly set forth that he could be denied parole eligibility at sentencing.

The District Court sentenced Blake to eighty years in the Montana State Prison for the crime of deliberate homicide. The court sentenced Blake to an additional ten years for the use of a weapon while committing the deliberate homicide. The court ordered

3

that the sentences run consecutively and that Blake be ineligible for parole or participation in a supervised release program for the duration of his incarceration.

Blake now appeals that portion of his sentence in which the court denied him eligibility for parole or participation in a supervised release program.

## Issue

Did the District Court err in denying Blake eligibility for parole or participation in a supervised release program?

District courts are afforded broad discretion in sentencing criminal defendants and we will not overturn a court's sentencing decision absent an abuse of discretion. State v. Losson (1993), 262 Mont. 342, 352, 865 P.2d 255, 261. Section 46-18-202(2), MCA, provides:

> Whenever the district court imposes a sentence of imprisonment in the state prison for a term exceeding 1 year, the court may also impose the restriction that the defendant is ineligible for parole and participation in the supervised release program while serving that term. If the restriction is to be imposed, the court shall state the reasons for it in writing. If the court finds that the restriction is necessary for the protection of society, it shall impose the restriction as part of the sentence and the judgment must contain a statement of the reasons for the restriction.

The District Court set forth in its judgment the rationale for denying Blake eligibility for parole or participation in a supervised release program. The court recounted the facts of this case, including Blake's shooting of Stevenson, the burying of the body in a manure pile and the ransom demand placed on the victim's wife. The court concluded that Blake had shown no true remorse for

4

what he had done. The court also found that there was no apparent reason for Blake's violent attack of Stevenson and that immediately prior to the incident Blake had been leading a normal life. The court further noted that there was a warrant for Blake's arrest on another charge of homicide in California. All of these factors led the District Court to believe that there was little chance that Blake could be rehabilitated and that he would be a continuing danger to society.

Blake contests several of the court's reasons for denying his eligibility for parole or participation in a supervised release program. First, he argues that the court erred in concluding that he showed no remorse for his actions. Blake points out that he was emotional during the change of plea hearing and that the proceedings had to be stopped several times to allow him to compose himself.

However, the District Court found that the only remorse exhibited by Blake was that of a man who had been caught. The court interpreted Blake's emotional displays as sorrow that he had been caught, not as sorrow for killing Wayne Stevenson or sorrow for the pain he caused the Stevenson family. The District Court is in the best position to weigh the credibility and veracity of witnesses and we will not substitute our judgment for that of the District Court. State v. Flack (1993), 260 Mont. 181, 189, 860 P.2d 89, 94.

Blake also argues that the record demonstrates that he was a good worker, a good family man, and, apart from this incident, led

5

a stable and quality life. Blake insists that his lack of a criminal record and otherwise virtuous lifestyle are evidence that he could be rehabilitated and that the court erred in finding otherwise.

The District Court, however, did not find Blake's pre-conviction lifestyle as evidence that he could be rehabilitated. To the contrary, the court found that Blake gained the trust and admiration of his former employers and community, and then turned and killed his employer for apparently no good reason. The court found that this indicated that Blake was completely unpredictable and would be an ongoing danger to society. Further danger to society has long been considered grounds for denying a defendant eligibility for parole. State v. Beach (1985), 217 Mont. 132, 705 P.2d 94. The record clearly indicates that Blake is unpredictable and would be a further danger to society if released.

Blake also argues that the court erred in stating that there was apparently no motive behind this crime. Blake maintains that Stevenson insulted his wife prior to the shooting incident and this was the motivating factor for the murder.

While Blake made these allegations, the record is replete with testimony from Stevenson's family, friends and employees that such conduct would have been completely out of character for Stevenson. When there is conflicting evidence, the district court is in the best position to weigh the credibility of the various witnesses in coming to its conclusions. Flack, 860 P.2d at 94. Regardless,

6

making a derogatory remark about Blake's wife can hardly be considered valid "motive" for shooting Stevenson to death.

Finally, Blake argues that the District Court erred in considering the extradition warrant for a suspected homicide committed in California. Blake did not object to the court's consideration of the warrant at sentencing. Since Blake failed to object at trial, this Court will not consider this argument on appeal. Section 46-20-104(2), MCA; Whiting v. State (1991), 284 Mont. 207, 220, 810 P.2d 1177, 1187.

We conclude that the District Court did not abuse its discretion in denying Blake eligibility for parole or participation in a supervised release program. The evidence demonstrates that Blake acted unpredictably, without motivation, showed no true remorse for his crime, and if released would be a further danger to society.

We affirm the decision of the District Court.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

7